UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    Civil Case No. 9:20-cv-00126-DLC
and STATE OF MONTANA,

                     Plaintiffs,

      v.

BNSF Railway Company,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REMEDIAL ACTION CONSENT DECREE

# TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................. 1
II.     JURISDICTION .................................................................................................. 2
III.    PARTIES BOUND .............................................................................................. 2
IV.     DEFINITIONS..................................................................................................... 3
V.      GENERAL PROVISIONS .................................................................................. 6
VI.     PERFORMANCE OF THE WORK .................................................................... 6
VII.    REMEDY REVIEW ........................................................................................... 9
VIII.   PROPERTY REQUIREMENTS ......................................................................... 9
IX.     PAYMENTS FOR RESPONSE COSTS ........................................................... 11
X.      INDEMNIFICATION........................................................................................ 13
XI.     FORCE MAJEURE ........................................................................................... 14
XII.    DISPUTE RESOLUTION ................................................................................. 15
XIII.   STIPULATED PENALTIES ............................................................................. 17
XIV.    COVENANTS BY PLAINTIFFS...................................................................... 20
XV.     COVENANTS BY SETTLING DEFENDANT ................................................ 23
XVI.    EFFECT OF SETTLEMENT; CONTRIBUTION ............................................ 25
XVII.   ACCESS TO INFORMATION ......................................................................... 26
XVIII.  RETENTION OF RECORDS............................................................................ 27
XIX.    NOTICES AND SUBMISSIONS...................................................................... 28
XX.     RETENTION OF JURISDICTION ................................................................... 29
XXI.    APPENDICES ................................................................................................... 29
XXII.   MODIFICATION .............................................................................................. 29
XXIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT............................ 30
XXIV.   SIGNATORIES/SERVICE................................................................................ 30
XXV.    FINAL JUDGMENT ........................................................................................ 30

# I.   BACKGROUND

A.      The United States of America (United States), on behalf of the Administrator of the United States Environmental Protection Agency (EPA), and the State of Montana filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9606 and 9607.

B.      The Plaintiffs in their complaint seek, *inter alia*: (1) reimbursement of costs incurred by EPA, the Department of Justice (DOJ), and the State of Montana (State) for response actions at the Libby Asbestos Superfund Site, Operable Unit 6, as defined herein (Site), together with accrued interest; and (2) performance of response actions by the defendant at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (NCP).

C.      The defendant (Settling Defendant) does not admit any liability to plaintiffs arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

D.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Libby Asbestos Superfund Site on the National Priorities List (NPL), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on October 24, 2002, 67 Fed. Reg. 65315.

E.      In approximately 2006, Settling Defendant completed a response action at the Libby Railyard pursuant to an Administrative Order on Consent (CERCLA Docket No. CERCLA-08-2003-0004, Libby Asbestos Site, Libby, Montana SSID#08-BC) (AO). EPA accepted final reports detailing the response action in 2010. On June 21, 2018, EPA issued a letter confirming the closure of the AO.

F.      In response to a release or a substantial threat of a release of a hazardous substance at or from the Site, EPA commenced on September 24, 2013, a remedial investigation and feasibility study (RI/FS) for the Site pursuant to 40 C.F.R. § 300.430.

G.      Settling Defendant completed a remedial investigation (RI) report on April 30, 2014, pursuant to EPA's Request for Additional Removal Action under the AO and the EPA completed a feasibility study (FS) Report in May 2015.

H.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision (ROD), executed on February 8, 2016, on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

I.      Additional, substantial post-ROD confirmation sampling, at Plaintiffs' agreed depths and intervals (identified for the Site in Appendix B to the ROD) along locations identified as possibly having uncertainty, was completed by Settling Defendant. Applicable remedial action levels (RALs) were not exceeded in any of the confirmation samples and no additional sampling or removal work is required at this time.

J.      Based on the information presently available to EPA and the State, EPA and the State believe that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with this Consent Decree and its appendices.

K.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

L.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1367 and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.      PARTIES BOUND

2.      This Consent Decree is binding upon the United States and the State and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status of Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work and to each person representing Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

2

# IV.   DEFINITIONS

4.       Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

"Affected Property" shall mean all real property at the Libby Asbestos Superfund Site, Operable Unit 6, and any other real property where EPA determines, at any time, that access, land, water, or other resource use restrictions, and/or Institutional Controls are needed to implement the Remedial Action.

"AO" shall mean Administrative Order on Consent, issued under CERCLA Docket No. CERCLA-08-2003-0004, Libby Asbestos Site, Libby, Montana SSID#08-BC.

"CECRA" shall mean the Comprehensive Environmental Cleanup and Responsibility Act, §§ 75-10-705-729, MCA.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this consent decree and all appendices attached hereto (listed in Section XXI). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, Montana Department of Environmental Quality's (MDEQ's) costs under a State Cooperative Agreement with EPA, the

costs incurred pursuant to Paragraph 9 (Emergencies and Releases), Paragraph 10 (Community Involvement) (including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e)), Section VII (Remedy Review), Section VIII (Property Requirements) (including the cost of attorney time and any monies paid to secure or enforce access or land, water, or other resource use restrictions and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including the amount of just compensation), and Section XII (Dispute Resolution), and all litigation costs. Future Response Costs shall also include all costs, including, but not limited to, direct and indirect costs, (a) paid by the United States in connection with the Site accrued during the period from September 30, 2019 to the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Libby Asbestos Operable Unit 6 Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"MDEQ" shall mean the Montana Department of Environmental Quality and any successor departments or agencies of the State.

"NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, and monitor the effectiveness of the Remedial Action as specified in the SOW or any EPA-approved O&M Plan.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, the State of Montana, and Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through

September 30, 2019, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the ROD.

"Plaintiffs" shall mean the United States and the State of Montana.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or other resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"ROD" shall mean the EPA Record of Decision relating to the Libby Asbestos Superfund Site, Operable Units 4, 5, 6, 7, and 8, signed on February 8, 2016, by the Regional Administrator, EPA Region 8, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean the remedial action selected in the ROD, for Operable Unit 6 of the Libby Asbestos Superfund Site. The scope of the remedy is defined further in the attached Statement of Work (SOW).

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean BNSF Railway Company.

"Site" shall mean Operable Unit 6 of the Libby Asbestos Superfund Site, defined geographically by the boundary of Settling Defendant's railroad right-of-way from the eastern boundary of Operable Unit 4 of the Libby Asbestos Superfund Site (Residential/Commercial Area of Libby, Montana) to the western boundary of Operable Unit 7 of the Libby Asbestos Superfund Site (Town of Troy, Montana), totaling approximately 42 miles of Settling Defendant's right-of-way (from approximately BNSF Milepost 1301 of Settling Defendant's Kootenai River Subdivision to approximately BNSF Milepost 1342), and the extent of contamination associated with Settling Defendant's Libby and Troy railyards, depicted generally on the map attached as Appendix C. The width of Operable Unit 6 is defined by the width of Settling Defendant's right-of-way, which is variable, but is generally 100 feet to either side of the track centerline. The Settling Defendant's track and right-of-way generally follows the courses of the Fisher and Kootenai Rivers.

"State" shall mean the State of Montana.

"SOW" shall mean the Statement of Work, the document describing the activities Settling Defendant must perform to implement the Remedial Action and O&M regarding the Site, which is attached hereto as Appendix B.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27); and (4) any "hazardous or deleterious substance" under Section 75-10-701(8), MCA.

"Work" shall mean all activities and obligations Settling Defendant is required to perform under this Consent Decree, except the activities required under Section XVIII (Retention of Records).

## V.    GENERAL PROVISIONS

5.    **Objectives of the Parties**. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the implementation of response actions at the Site by Settling Defendant, to pay response costs of Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendant as provided in this Consent Decree.

6.    **Commitments by Settling Defendant**. Settling Defendant shall finance and perform the Work in accordance with this Consent Decree and all deliverables developed by Settling Defendant and approved or modified by EPA pursuant to this Consent Decree. Settling Defendant shall pay the United States for its response costs and the State for its response costs as provided in this Consent Decree.

## VI.    PERFORMANCE OF THE WORK

7.    **Coordination and Supervision**

a.    **Project Coordinators**

(1)    Settling Defendant's Project Coordinator must have sufficient technical expertise to coordinate the Work. The Parties' Project Coordinators may not be an attorney representing the parties in this matter and may not act as the Supervising Contractor. Settling Defendant's Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

(2)    EPA has designated Dania Zinner as EPA's Project Coordinator. EPA may designate other representatives, which may include its employees,

contractors and/or consultants, to oversee the Work. EPA's Project Coordinator will have the same authority as a remedial project manager and/or an on-scene coordinator, as described in the NCP. This includes the authority to halt the Work and/or to conduct or direct any necessary response action when he or she determines that conditions at the Site constitute an emergency or may present an immediate threat to public health or welfare or the environment due to a release or threatened release of Waste Material.

      (3)     The State has designated Jason Rappe as MDEQ's Project Coordinator. The State may designate other representatives, including its employees, contractors and/or consultants to oversee the Work. For any meetings and inspections in which EPA's Project Coordinator participates, the State's Project Coordinator also may participate.

      (4)     Notwithstanding the procedures of Paragraphs 7.b, Settling Defendant has proposed, and EPA has authorized Settling Defendant to proceed, regarding the following Project Coordinator:

> Mark Engdahl
> Manager – Environmental Remediation
> BNSF Railway Company
> 800 North Last Chance Gulch
> Helena, Montana 59601
> Office: 406-256-4048
> Mark.Engdahl@bnsf.com

b.      **Procedures for Disapproval/Notice to Proceed**

      (1)     Settling Defendant may change their Project Coordinator, as applicable, by following the procedures of Paragraphs 7.b(2) and 7.b(3).

      (2)     Settling Defendant shall designate, and notify EPA, of the name, title, contact information, and qualifications of the Settling Defendant's proposed Project Coordinator, whose qualifications shall be subject to EPA's review for verification based on objective assessment criteria (e.g., experience, capacity, technical expertise) and do not have a conflict of interest with respect to the project.

      (3)     EPA, after a reasonable opportunity for review and comment by the State, shall issue notices of disapproval and/or authorizations to proceed regarding the proposed Project Coordinator, as applicable. If EPA issues a notice of disapproval, Settling Defendant shall, within 30 days, submit to EPA a list of supplemental proposed Project Coordinators, as applicable, including a description of the qualifications of each. EPA shall issue a notice of disapproval or authorization to proceed regarding each supplemental proposed coordinator. Settling Defendant may select any coordinator covered by an authorization to proceed and shall, within 21 days, notify EPA of Settling Defendant's selection.

8.      **Performance of Work in Accordance with SOW**. Settling Defendant shall: (a) perform the Remedial Action and (b) operate, maintain, and monitor the effectiveness of the Remedial Action; all in accordance with the SOW and all EPA-approved, conditionally-approved, or modified deliverables as required by the SOW. All deliverables required to be submitted for approval under the Consent Decree or SOW shall be subject to approval by EPA in accordance with Paragraph 4.5 (Approval of Deliverables) of the SOW.

9.      **Emergencies and Releases**. Settling Defendant shall comply with the emergency release response and reporting requirements under Paragraph 3.1 (Emergency Response and Reporting) of the SOW. Subject to Section XIV (Covenants by Plaintiffs), nothing in this Consent Decree, including Paragraph 3.1 of the SOW, limits any authority of Plaintiffs: (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site. If, due to Settling Defendant's failure to take appropriate response action under Paragraph 3.1 of the SOW, EPA or, as appropriate, the State take such action instead, Settling Defendant shall reimburse EPA and the State under Section IX (Payments for Response Costs) for all costs of the response action.

10.     **Community Involvement**. If requested by EPA, Settling Defendant shall assist with community involvement activities under EPA's oversight as provided for in, and in accordance with, Section 2 (Community Involvement) of the SOW. Costs incurred by the United States under this Section constitute Future Response Costs to be reimbursed under Section IX (Payments for Response Costs).

11.     **Modification of SOW or Related Deliverables**

a.      If EPA determines that it is necessary to modify the work specified in the SOW and/or in deliverables developed under the SOW in order to carry out and maintain the effectiveness of the Remedial Action, and such modification is consistent with the Scope of the Remedy set forth in Paragraph 1.3 of the SOW, then EPA may notify Settling Defendant of such modification. If Settling Defendant objects to the modification it may, within 30 days after EPA's notification, seek dispute resolution under Section XII.

b.      The SOW and/or related work plans shall be modified: (1) in accordance with the modification issued by EPA; or (2) if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Defendant shall implement all work required by such modification. Settling Defendant shall incorporate the modification into the deliverable required under the SOW, as appropriate.

c.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

12.     Nothing in this Consent Decree, the SOW, or any deliverable required under the SOW constitutes a warranty or representation of any kind by any party that compliance with the

work requirements set forth in the SOW or related deliverable will achieve the Performance Standards.

## VII.   REMEDY REVIEW

13.     **Periodic Review**. Settling Defendant shall conduct studies and investigations to support EPA's reviews under Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and applicable regulations, of whether the Remedial Action is protective of human health and the environment.

## VIII.   PROPERTY REQUIREMENTS

14.     **Agreements Regarding Access and Non-Interference.** Settling Defendant shall, with respect to any Affected Property it does not own, use best efforts to secure from such owner an agreement, enforceable by Settling Defendant and by Plaintiffs, that: (i) provides Plaintiffs and Settling Defendant, and their representatives, contractors, and subcontractors with access at all reasonable times to such Affected Property to conduct any activity regarding the Consent Decree, including those listed in Paragraph 14.a (Access Requirements); and (ii) refrain from using such Affected Property in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material, or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the restrictions listed in Paragraph 14.b (Land, Water, or Other Resource Use Restrictions). Settling Defendant shall, with respect to Affected Property that it owns, provide Plaintiffs and their representatives, contractors, and subcontractors railroad-escorted access to such Affected Property, at all reasonable times, as set forth in this Paragraph. The Affected Property includes active railyards and rail lines. Any such access will be subject to Settling Defendant's Health and Safety Plan, Settling Defendant's railroad safety rules and, where possible, reasonable notice. Notwithstanding any provision of this Consent Decree, EPA and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related hereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

a.      **Access Requirements**. The following is a list of activities for which access is required regarding the Affected Property:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or the State;

(3)     Conducting investigations regarding contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved construction quality assurance quality control plan as provided in the SOW;

(7)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or their agents, consistent with Section XVII (Access to Information);

(8)     Assessing Settling Defendant's compliance with the Consent Decree;

(9)     Determining whether the Affected Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(10)     Implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

b.     **Land Use Restrictions**. Land use restrictions are set forth in the Environmental Covenant, attached hereto as Appendix D.

c.     **Best Efforts**. As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendant would use so as to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access. If Settling Defendant is unable to accomplish what is required through "best efforts" in a timely manner, it shall notify the United States, and include a description of the steps taken to comply with the requirements. If the United States deems it appropriate, it may assist Settling Defendant, or take independent action, in obtaining such access. All costs incurred by the United States in providing such assistance or taking such action, including the cost of attorney time and the amount of monetary consideration or just compensation paid, constitute Future Response Costs to be reimbursed under Section IX (Payments for Response Costs).

15.     In the event of any Transfer of the Affected Property, unless the United States otherwise consents in writing, Settling Defendant shall continue to comply with its obligations under the Consent Decree, including its obligation to secure access and ensure compliance with any land, water, or other resource use restrictions regarding the Affected Property, and to implement, maintain, monitor, and report on Institutional Controls.

16.     Notwithstanding any provision of the Consent Decree, Plaintiffs retain all of their access authorities and rights, as well as all of their rights to require land, water, or other resource use restrictions and Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## IX.   PAYMENTS FOR RESPONSE COSTS

17.   **Payments by Settling Defendant for Past Response Costs**

a.   Settling Defendant has previously paid all Past Response Costs, including MDEQ's costs under a State Cooperative Agreement with EPA.

18.   **Payments by Settling Defendant for Future Response Costs**. Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a.   **Periodic Bills**. On a periodic basis, EPA will send Settling Defendant an electronic billing notification to the following email address:

Mark.Engdahl@bnsf.com and Shannon.Boxberger@bnsf.com.

The billing notification will include a standard EPA cost report, which includes direct and indirect costs incurred by EPA, its contractors, subcontractors, the State and DOJ. Settling Defendant shall make all payments within 30 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 20, in accordance with Paragraph 19.a (instructions for future response cost payments).

If the electronic billing notification is undeliverable, EPA will mail a paper copy of the billing notification to Respondent to:

Mark Engdahl
Manager – Environmental Remediation
BNSF Railway Company
800 North Last Chance Gulch
Helena, Montana 59601

b.   Settling Defendant may change its email address by providing notice of the new address to:

Financial Management Officer
U.S. EPA, Region 8 (MSD-FM-B)
1595 Wynkoop Street
Denver, Colorado 80202

c.   **Deposit of Future Response Costs Payments**. The total amount to be paid by Settling Defendant pursuant to Paragraph 18.a (Periodic Bills) shall be deposited by EPA in the Libby Asbestos Special Account to be retained and used to conduct or finance response actions at or in connection with the Libby Asbestos Superfund Site, or to be transferred by EPA in its sole discretion to the EPA Hazardous Substance Superfund.

19.     **Payment Instructions for Settling Defendant**

    a.     **Future Response Costs Payments and Stipulated Penalties**

        (1)     For all payments subject to this Paragraph 19.a, Settling Defendant shall make such payment in accordance with instructions provided in periodic bills from EPA.

        (2)     For all payments made under this Paragraph 19.a, Settling Defendant must include references to the Site/Spill ID and DJ numbers. At the time of any payment required to be made in accordance with Paragraph 19.a, Settling Defendant shall send notices that payment has been made to the United States, EPA, and the EPA Cincinnati Finance Center, all in accordance with Paragraph 74. All notices must include references to the Site/Spill ID and DJ numbers.

20.     **Contesting Future Response Costs**. Settling Defendant may submit a Notice of Dispute, initiating the procedures of Section XII (Dispute Resolution), regarding any Future Response Costs billed under Paragraph 18 (Payments by Settling Defendant for Future Response Costs) if it determines that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if it believes EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such Notice of Dispute shall be submitted in writing within 30 days after receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed) pursuant to Section XIX (Notices and Submissions). Such Notice of Dispute shall specifically identify the contested Future Response Costs and the basis for objection. If Settling Defendant submits a Notice of Dispute, Settling Defendant shall, as a requirement for initiating the dispute, within the 30-day period (a) pay all uncontested Future Response Costs to the United States and (b) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation (FDIC), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Settling Defendant shall send to the United States, as appropriate, as provided in Section XIX (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. If the United States prevails in the dispute, Settling Defendant shall pay the sums due (with accrued interest) to the United States. If Settling Defendant prevails concerning any aspect of the contested costs, Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which it did not prevail to the United States within 60 days after resolution of the dispute in accordance with Section XII (Dispute Resolution). Settling Defendant shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraph 19.a (instructions for future response cost payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XII (Dispute Resolution) shall be the

exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse the United States for its Future Response Costs.

21.     **Interest**. In the event that any payment for Future Response Costs required under this Section is not made by the date required, Settling Defendant shall pay Interest on the unpaid balance. The Interest on Future Response Costs shall begin to accrue on the date of the bill. Except as otherwise provided in Paragraph 34, the Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XIII (Stipulated Penalties).

## X.      INDEMNIFICATION

22.     **Settling Defendant's Indemnification of the United States and the State**

a.      The United States and the State do not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendant shall indemnify, save, and hold harmless the United States and the State and their officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA. Further, Settling Defendant agrees to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States and the State based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree. Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree. Neither Settling Defendant nor any such contractor shall be considered an agent of the United States or the State.

b.      The United States and the State, respectively, shall give Settling Defendant notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 22 within 10 days after assertion of a claim or service of a complaint, and shall consult with Settling Defendant prior to settling such claim.

23.     Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States and the State, respectively, for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between Settling

Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendant shall indemnify, save and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

## XI.   FORCE MAJEURE

24.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation. The requirement that Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

25.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Settling Defendant intends or may intend to assert a claim of force majeure, Settling Defendant shall notify EPA's Project Coordinator orally or electronically or, in his or her absence, the Division Director of the Superfund and Emergency Management Division, EPA Region 8, within three days of when Settling Defendant first knew that the event might cause a delay. Within ten days thereafter, Settling Defendant shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendant shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors or subcontractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late or incomplete notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 24 and whether Settling Defendant has exercised their best efforts under Paragraph 24, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely or complete notices under this Paragraph.

26.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure, the time for

14

performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendant in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

27.     If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution) regarding EPA's decision, it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 24 and 25. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

28.     The failure by EPA to timely complete any obligation under the Consent Decree or under the SOW is not a violation of the Consent Decree, provided, however, that if such failure prevents Settling Defendant from meeting one or more deadlines in the SOW, Settling Defendant may receive like relief under this Section.

## XII.   DISPUTE RESOLUTION

29.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section.

30.     A dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute. Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.

31.     **Statements of Position**

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving

on the United States and the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. The Statement of Position shall specify Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 32 (Record Review) or 33.

       b.     Within thirty days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 32 (Record Review) or 33. Within thirty days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

       c.     If there is disagreement between EPA and Settling Defendant as to whether dispute resolution should proceed under Paragraph 32 (Record Review) or 33, the parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 32 and 33.

       32.     **Record Review**. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the ROD's provisions.

       a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

       b.     The Division Director of the Superfund and Emergency Management Division, EPA Region 8, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 32.a. This decision shall be binding upon Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraphs 32.c and 32.d.

       c.     Any administrative decision made by EPA pursuant to Paragraph 32.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on all Parties within 30 days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts

made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendant's motion.

        d.    In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Division Director of the Superfund and Emergency Management Division, EPA Region 8, is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 32.a.

33.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

        a.    The Division Director of the Superfund and Emergency Management Division, EPA Region 8, will issue a final decision resolving the dispute based on the statements of position and reply, if any, served under Paragraph 31. The decision of the Division Director of the Superfund and Emergency Management Division, EPA Region 8, shall be binding on Settling Defendant unless, within 30 days after receipt of the decision, Settling Defendant files with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

        b.    Notwithstanding Paragraph K (CERCLA § 113(j) record review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

34.    The invocation of formal dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of Settling Defendant under this Consent Decree, except as provided in Paragraph 20 (Contesting Future Response Costs), as agreed by EPA, or as determined by the Court. Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in Paragraph 40. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIII (Stipulated Penalties).

## XIII.   STIPULATED PENALTIES

35.    Settling Defendant shall be liable to the United States for stipulated penalties in the amounts set forth in Paragraph 36.a for failure to comply with the obligations specified in Paragraph 36.b, unless excused under Section XI (Force Majeure). "Comply" as used in the previous sentence includes compliance by Settling Defendant with all applicable requirements of this Consent Decree, within the deadlines established under this Consent Decree. If an initially submitted or resubmitted deliverable contains a material defect, and the deliverable is disapproved or modified by EPA under Paragraphs 4.5(a) (Initial Submissions) or 4.5(b)

(Resubmissions) of the SOW due to such material defect, then the material defect shall constitute a lack of compliance for purposes of this Paragraph.

36. **Stipulated Penalty Amounts - Payments, Major Deliverables, and Other Milestones**

a. The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 36.b:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $750 |
| 15th through 30th day | $1,000 |
| 31st day and beyond | $2,500 |

b. **Obligations**

(1) Payment of any amount due under Section IX (Payments for Response Costs)

(2) Establishment of an escrow account to hold any disputed Future Response Costs under Paragraph 20 (Contesting Future Response Costs)

(3) Timely submission of Draft Final ICIAP

(4) Timely submission of Final ICIAP

(5) Timely submission of Draft Final Remedial Action Report

(6) Timely submission of Final Remedial Action Report

(7) Timely submission of Draft Final O&M Plan (including Best Management Practices Manual)

(8) Timely submission of Final O&M Plan (including Best Management Practices Manual)

(9) Timely submission of any other deliverables pursuant to the Consent Decree

37. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Paragraph 4.5 (Approval of Deliverables) of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (b) with respect to a decision by the Division Director of the Superfund and Emergency Management Division, EPA Region 8, under Paragraph 32.b or 33.a of Section XII (Dispute Resolution), during the period, if any, beginning on the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision

18

regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

38.     Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendant written notification of the same and describe the noncompliance. EPA and the State may send Settling Defendant a written demand for payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendant of a violation.

39.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XII (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 19.a (instructions for future response cost payments).

40.     Penalties shall continue to accrue as provided in Paragraph 37 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 30 days after the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 40.c;

c.     If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that they prevail.

41.     If Settling Defendant fails to pay stipulated penalties when due, Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 40 until the date of payment; and (b) if Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the end of the 30-day deadline communicated in the demand under Paragraph 39 until the date of

payment. If Settling Defendant fails to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

42.     The payment of penalties and Interest, if any, shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

43.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

44.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XIV.  COVENANTS BY PLAINTIFFS

45.     **Covenants for Settling Defendant by United States**. Except as provided in Paragraph 49 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA for the Work, Past Response Costs, and Future Response Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants extend only to Settling Defendant and do not extend to any other person.

46.     **United States' Pre-Certification Reservations**. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to Certification of Remedial Action Completion, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

47.     **United States' Post-Certification Reservations**. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of Remedial Action Completion, (1) conditions at the Site,

previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

48.     For purposes of Paragraph 46 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD. For purposes of Paragraph 47 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Remedial Action Completion and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Remedial Action Completion.

49.     **General Reservations of Rights**. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiff's covenants. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a.      liability for failure by Settling Defendant to meet a requirement of this Consent Decree;

b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.      liability based on the ownership of the Site by Settling Defendant when such ownership commences after signature of this Consent Decree by Settling Defendant;

d.      liability based on the operation of the Site by Settling Defendant when such operation commences after signature of this Consent Decree by Settling Defendant and does not arise solely from Settling Defendant's performance of the Work;

e.      liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendant;

f.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.      criminal liability;

h.      liability for violations of federal or state law that occur during or after implementation of the Work; and

i.      liability for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of

the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 11 (Modification of SOW or Related Deliverables);

j.      liability for costs that the United States will incur regarding the Site but that are not within the definition of Future Response Costs.

50.     **Covenants and Reservations by the State**.  Except as provided in Paragraph 54 (General Reservations of Rights), the State covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA and Sections 711, 715, and 722 of CECRA for the Work, Past Response Costs, and Future Response Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants extend only to Settling Defendant and do not extend to any other person.

51.     **State's Pre-Certification Reservations**. Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the State for additional costs of response if, (a) prior to Certification of Remedial Action Completion, (1) conditions at the Site, previously unknown to the State, are discovered, or (2) information, previously unknown to the State, is received, in whole or in part, and (b) the State determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

52.     **State's Post-Certification Reservations**. Notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Site and/or to pay the State for additional costs of response if, (a) subsequent to Certification of Remedial Action Completion, (1) conditions at the Site, previously unknown to the State, are discovered, or (2) information, previously unknown to the State, is received, in whole or in part, and (b) the State determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

53.     For purposes of Paragraph 51 (State's Pre-Certification Reservations), the information and the conditions known to State will include only that information and those conditions known to State as of the date the ROD was signed and set forth in the ROD for the Site and the administrative record supporting the ROD. For purposes of Paragraph 52 (State's Post-Certification Reservations), the information and the conditions known to the State shall include only that information and those conditions known to the State as of the date of Certification of Remedial Action Completion and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by the

22

State pursuant to the requirements of this Consent Decree prior to Certification of Remedial Action Completion.

54. **State's General Reservations of Rights**. The State reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiff's covenants. Notwithstanding any other provision of this Consent Decree, the State reserves all rights against Settling Defendant with respect to:

a. liability for failure by Settling Defendant to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based on the ownership of the Site by Settling Defendant when such ownership commences after signature of this Consent Decree by Settling Defendant;

d. liability based on the operation of the Site by Settling Defendant when such operation commences after signature of this Consent Decree by Settling Defendant and does not arise solely from Settling Defendant's performance of the Work;

e. liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA or the State, after signature of this Consent Decree by Settling Defendant;

f. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g. criminal liability;

h. liability for violations of federal or state law that occur during or after implementation of the Work;

i. liability for additional response actions that EPA or the State determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 11 (Modification of SOW or Related Deliverables); and

j. liability for costs that the State will incur regarding the Site but that are not within the definition of Future Response Costs

## XV.   COVENANTS BY SETTLING DEFENDANT

55. **Covenants by Settling Defendant**. Subject to the reservations in Paragraph 57, Settling Defendant covenants not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, and this Consent Decree, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA §§ 106(b)(2), 107, 111, 112 or 113, or any other provision of law or any direct or indirect claim for reimbursement or funding under State law, including any direct or indirect claim for reimbursement from the Environmental Quality Protection Fund (established pursuant to § 75-10-743, MCA), or any other provision of law;

b.      any claims under CERCLA §§ 107 or 113 or state law regarding the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, Settling Defendant's Past Response Costs, Settling Defendant's Future Response Costs, and this Consent Decree; or

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

56.      Except as provided in Paragraph 65 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or the State brings a cause of action or issues an order pursuant to any of the reservations in Section XIV (Covenants by Plaintiffs), other than in Paragraphs 49.a (claims for failure to meet a requirement of the Consent Decree), 49.g (criminal liability), and 49.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States or the State is seeking pursuant to the applicable reservation.

57.      Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendant's deliverables or activities.

58.      **Settling Defendant's Reservation.** Settling Defendant avers that it is a common carrier by rail and the Affected Property is an integral part of the interstate commerce system. Settling Defendant does not waive preemption under the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10501(b), or other applicable federal law to the extent that Plaintiffs seek to take or require some action on the Affected Property that impacts Settling Defendant's common carrier obligations.

59.      Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XVI.  EFFECT OF SETTLEMENT; CONTRIBUTION

60.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action, to, any person not a Party to this Consent Decree. Except as provided in Section XV (Covenants by Settling Defendant), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

61.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree.

The "matters addressed" in this Consent Decree are the Work, Past Response Costs and Future Response Costs.

62.     The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

63.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

64.     Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and the State within 10 days after service of the complaint on such Settling Defendant. In addition, Settling Defendant shall notify the United States and the State within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

65.     **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant and, with respect to a State action, shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other

defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XIV (Covenants by Plaintiffs).

# XVII. ACCESS TO INFORMATION

66.     Settling Defendant shall provide to EPA and the State, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within Settling Defendant's possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work. Settling Defendant shall also make available to EPA and the State, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

67.     **Privileged and Protected Claims**

a.     Settling Defendant may assert that all or part of a Record requested by Plaintiffs is privileged or protected as provided under federal law, in lieu of providing the Record, provided Settling Defendant complies with Paragraph 67.b, and except as provided in Paragraph 67.c.

b.     If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Defendant shall provide the Record to Plaintiffs in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all Records that it claims to be privileged or protected until Plaintiffs have had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Settling Defendant's favor.

c.     Settling Defendant may make no claim of privilege or protection regarding: (1) any data regarding the Site, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or (2) the portion of any Record that Settling Defendant are required to create or generate pursuant to this Consent Decree.

68.     **Business Confidential Claims**. Settling Defendant may assert that all or part of a Record provided to Plaintiffs under this Section or Section XVIII (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Settling Defendant shall segregate and clearly identify all Records or parts thereof submitted under this Consent Decree for which

Settling Defendant assert business confidentiality claims. Records that Settling Defendant claim to be confidential business information will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendant.

69.     If relevant to the proceeding, the Parties agree that validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.

70.     Notwithstanding any provision of this Consent Decree, Plaintiffs retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA and any other applicable statutes or regulations.

## XVIII.         RETENTION OF RECORDS

71.     Until 10 years after EPA's Certification of Work Completion under Paragraph 3.2 (Certification of Work Completion) of the SOW, Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendant who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

72.     At the conclusion of this record retention period, Settling Defendant shall notify the United States and the State at least 90 days prior to the destruction of any such Records, and, upon request by the United States or the State, and except as provided in Paragraph 67 (Privileged and Protected Claims), Settling Defendant shall deliver any such Records to EPA or the State.

73.     Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State and that it has fully complied with any and all EPA and State requests for information regarding the Site

pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B) and state law.

## XIX.   NOTICES AND SUBMISSIONS

74.     All approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, and requests specified in this Consent Decree must be in writing unless otherwise specified. Whenever, under this Consent Decree, notice is required to be given, or a report or other document is required to be sent, by one Party to another, it must be directed to the person(s) specified below at the address(es) specified below. Any Party may change the person and/or address applicable to it by providing notice of such change to all Parties. All notices under this Section are effective upon receipt, unless otherwise specified. Notices required to be sent to EPA, and not to the United States, should not be sent to the DOJ. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

| | |
|---|---|
| **As to the United States**: | EES Case Management Unit<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-11-2-07106/9 |
| **As to EPA**: | Dania Zinner<br>EPA Project Coordinator – Libby Asbestos Site<br>U.S. EPA, Region 8 (SEM-RBB)<br>1595 Wynkoop Street<br>Denver, Colorado 80202<br>Zinner.Dania@epa.gov |
| **As to the Regional Financial Management Officer**: | Regional Financial Management Officer<br>Superfund Cost Recovery<br>Financial Management Unit (MSD-FM-B)<br>U.S. EPA, Region 8<br>1595 Wynkoop Street<br>Denver, Colorado 80202<br>Johnson.Karren@epa.gov |
| **At to EPA Cincinnati Finance Center**: | EPA Cincinnati Finance Center<br>26 W. Martin Luther King Drive<br>Cincinnati, Ohio 45268<br>cinwd_acctsreceivable@epa.gov |

| | |
|---|---|
| **As to the State**: | Jason Rappe<br>State Project Coordinator<br>P.O. Box 200901<br>Helena, Montana 59620-0901<br>Jason.Rappe@mt.gov |
| **As to Settling Defendant**: | Mark Engdahl<br>Manager – Environmental Remediation<br>BNSF Railway Company<br>800 North Last Chance Gulch<br>Helena, Montana 59601 |

## XX.   RETENTION OF JURISDICTION

75.     This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XII (Dispute Resolution).

## XXI.  APPENDICES

76.     The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the Environmental Covenant for Settling Defendant's Libby Railyard.

## XXII.  MODIFICATION

77.     Except as provided in Paragraph 11 (Modification of SOW or Related Deliverables), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendant, and shall be effective upon approval by the Court. Except as provided in Paragraph 11, non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendant. All modifications to the Consent Decree, other than the SOW, also shall be signed by the State, or a duly authorized representative of the State, as appropriate. A modification to the SOW shall be considered material if it implements a ROD amendment that fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii). Before providing its

approval to any modification to the SOW, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.

78.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXIII.        LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

79.     This Consent Decree shall be lodged with the Court for at least 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States and the State reserve their right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

80.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXIV.        SIGNATORIES/SERVICE

81.     The undersigned representative of Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and the Director of the Department of Environmental Quality for the State certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

82.     Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States or the State has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

83.     Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendant needs not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXV. FINAL JUDGMENT

84.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

85.     Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, the State, and Settling Defendant. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS __ DAY OF _____, 20__.


_____
United States District Judge

Signature Page for Consent Decree regarding the Libby Asbestos OU6 Superfund Site

**FOR THE UNITED STATES OF AMERICA:**

Nathaniel Douglas
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

5/18/2020
Dated

James D. Freeman
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th Street
South Terrace Suite 730
Denver, Colorado 80202

Kurt G. Alme
United States Attorney
District of Montana
316 N 26th St #5018
Billings, MT 59101

Victoria Francis
Assistant United States Attorney
District of Montana
316 N 26th St #5018
Billings, MT 59101

Signature Page for Consent Decree regarding the Libby Asbestos OU6 Superfund Site

**FOR THE EPA:**

5/21/2020
Dated

K.C. Schefski
Regional Counsel
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202

5/22/2020
Dated

Betsy Smidinger
Director, Superfund and Emergency Management Division
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202

33

Signature Page for Consent Decree regarding the Libby Asbestos OU6 Superfund Site

**FOR THE STATE OF MONTANA**:

5/12/2020
Dated

George Mathieus
Deputy Director
Montana Department of Environmental Quality
P.O. Box 200901
Helena, Montana 59620-0901

5/12/2020
Dated

Jessica Wilkerson
Legal Counsel
Montana Department of Environmental Quality
P.O. Box 200901
Helena, Montana 59620-0901

Signature Page for Consent Decree regarding the Libby Asbestos OU6 Superfund Site

**FOR** BNSF Railway Company**:**

04/16/2020
Dated

John Lovenburg
Vice President, Environmental
BNSF Railway Company
2500 Lou Menck Drive, AOB-3
Fort Worth, Texas 76131

| Agent Authorized to Accept Service on Behalf of Above-signed Party: | Name: | Jeff Hedger |
| | Title: | Registered Agent |
| | Company: | Hedger Friend, PLLC |
| | Address: | 2800 Central Avenue, Suite C |
| | | Billings, Montana 59102 |